UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ROSE D. ERWIN,

Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration,

Defendant.

CASE NO. 1:11-cv-0319-DML-JMS

# Decision on Judicial Review

Plaintiff Rose D. Erwin applied for Disability Insurance Benefits (DIB) on July 25, 2006, alleging that she has been disabled since August 25, 2002, because of osteoarthritis of the lumbar spine and both knees, asthma, depression, post traumatic stress disorder, and a rotator cuff tear. Ms. Erwin's last insured status date is December 31, 2007. The Social Security Administration ("SSA") denied her claim on initial review and reconsideration, a hearing before an administrative law judge was held May 6, 2009, and the ALJ issued a decision on July 1, 2009, finding that Ms. Erwin was not disabled on or before her date last insured. (R. 16-25). The National Appeals Council, after twice accepting additional materials for the administrative record, denied review of the ALJ's decision, rendering the ALJ's decision for the Commissioner final. Ms. Erwin filed this civil action, under 42 U.S.C. § 405(g), for review of the Commissioner's decision.[1]

Ms. Erwin contends the ALJ's decision must be reversed and remanded because he (a) did not properly consider the effect of her obesity on her respiratory and knee impairments;

---

[1] The parties consented to the magistrate judge conducting all proceedings and ordering the entry of judgment as provided by 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

(b) did not account for her complaints of chronic headaches; and (c) did not articulate a function-by-function assessment when determining her residual functional capacity. (Dkt. 17 at p. 12).

**Standard for Proving Disability**

To prove disability, a claimant must show that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Ms. Erwin is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to all the criteria for the most similar listed impairment, then the claimant is

presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

**Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands that there be more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). This

limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (internal citations omitted). *See also Cannon v. Apfel,* 213 F.3d 970, 974 (7th Cir. 2000) (court reviews record as a whole, but does not substitute its judgment for the ALJ's judgment by reweighing evidence, or resolving conflicts, or reconsidering the facts or witness credibility). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir. 1997). A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel,* 131 F.3d 1228, 1234 (7th Cir. 1997), or based the decision on serious factual mistakes or omissions. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). If an ALJ concludes that benefits should be denied, he must have first built an accurate, logical bridge between the evidence and his conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). The ALJ need not address every piece of evidence in his decision, but he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

**The ALJ's Findings**

Ms. Erwin was born in January 1954, was 48 years old at the time of her alleged onset of disability, and 53 years old as of her date last insured of December 31, 2007. Before August 2002 when Ms. Erwin stopped working, she had worked for many years in the restaurant industry training and supervising servers, jobs that required exertion at the medium level.

At step one, the ALJ determined that Ms. Erwin had not engaged in substantial gainful activity between her alleged onset date and her date last insured. (R. 16). At step two, he identified many severe impairments: osteoarthritis of the lumbar spine, mild osteoarthritis of the bilateral knees, asthma, alcohol dependent major depressive disorder, post traumatic stress disorder, and a rotator cuff tear. (R. 18 ). At step three, after evaluating her impairments against the relevant listings, the ALJ found no listings were met. (R. 22). Next, the ALJ evaluated the evidence to arrive at a residual functional capacity. He determined that Ms. Erwin was capable of performing the full range of light work: she can lift and carry 20 pounds occasionally and 10 pounds frequently, stand or walk six hours in an eight hour work day, sit six hours in an eight hour work day, frequently balance and stoop, occasionally climb ramps and stairs, and occasionally kneel, crouch, or crawl. No functional limits were imposed relating to manipulative, visual, communicative, or environmental factors. (R. 23).

**Analysis**

Ms. Erwin alleges three errors. First, she contends that the ALJ did not properly evaluate the effect of her obesity on her respiratory and musculoskeletal problems in either his step three analysis or his determination of her RFC. Second, she contends that the ALJ did not properly consider her headaches. Third, she contends that the ALJ was required to, but did not, articulate a function-by-function assessment in determining her RFC.

**I. <u>The ALJ's step three analysis is supported by substantial evidence</u>.**

The record does not support Ms. Erwin's contention that her obesity combined with her respiratory or musculoskeletal impairments met or medically equaled a listing.

**A. <u>Ms. Erwin has not shown her respiratory ailments met or equaled a listing</u>.**

The ALJ addressed Ms. Erwin's respiratory ailments, their improvement with medication, and the results of pulmonary function tests showing mild reduction in FVC (forced lung capacity) and FEV1 (a test measuring the amount of air exhaled in the first second of a forced exhalation) and other parameters within normal limits. (R. 19). Ms. Erwin's physique is reflected in her pulmonary functioning and her response to treatment. In other words, it is not possible to ignore her obesity in the testing of her own body's functioning and her body's response to treatment. The ALJ evaluated Ms. Erwin's respiratory impairment against listing 3.03 for asthma and found that she had not met the listing's requirement that physician intervention occurred at least every two months or at least six times per year. Ms. Erwin does not challenge the ALJ's consideration of listing 3.03, fault his conclusion that the record lacked medical evidence consistent with the listing's requirements, suggest that another listing should have been considered, or explain how her obesity should change the analysis for any of the respiratory disease listings. Ms. Erwin has the burden to prove her medical condition meets or medically equals all of the requirements of a listing, *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999), and she has not done that here.[2]

---

[2] In passing, Ms. Erwin complains that the ALJ should have consulted a medical expert at the hearing and asked for the expert's interpretation of the medical records (Dkt. 17 at p. 16), but she does not explain how the medical records available to the ALJ, including the written opinions of agency physicians regarding medical equivalence to the listings, were insufficient evidence on which the ALJ could base his step three determination. *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (ALJ may properly rely on state agency consultants on the question of medical equivalence); *Thomas v. Astrue*, 2010 WL 2485556 (S.D. Ind. June 11, 2010) (ALJ

**B. Ms. Erwin's obesity was considered in evaluating the musculoskeletal listings.**

The ALJ's evaluation of Ms. Erwin's complaints of back and knee impairments also took her obesity into account. The ALJ discussed the physical findings made by Dr. Yasir Aldtar, who performed a consultative physical examination of Ms. Erwin on October 19, 2006, and Dr. Aldtar's diagnosis of Ms. Erwin as obese and "with an extensive history of osteoarthritis involving her knees, lower lumbar spine, and hands and joints resulting in impaired functioning." (R. 19). The ALJ reported Dr. Aldtar's findings that Ms. Erwin was not able to squat, and had some difficulty walking on heels and toes and tandem walking secondary to her "body habitus," meaning her body build at 66 inches tall and a weight of 242 pounds. (*Id.*). He also considered radiology reports of (a) both knees that found minimal degenerative arthritis bilaterally and (b) three views of Ms. Erwin's lumbar spine that found normal lumbar vertebral alignment. (*Id.* at 20, R. 371-372). The ALJ explained that he considered listing 1.02 (major dysfunction of a joint) and listing 1.04 (disorders of the spine) and found the medical evidence did not include the clinical signs and symptoms that must be present to meet or medically equal these listings. (R. 22).

Ms. Erwin complains generally that the ALJ did not mention her obesity in his discussion of these listings but she does not point to any evidence of clinical findings consistent with the listings. Listing 1.02 titled "major dysfunction of a joint" requires "gross anatomical deformity," certain specific findings by acceptable medical imaging, and a claimant's inability to ambulate without using an assistive device limiting the function of both upper extremities. Listing 1.04 titled "disorders of the spine" also requires very specific medical findings, such as medical

---

does not err in failing to summon medical expert on equivalence where no showing is made that ALJ disregarded pertinent medical evidence contrary to his findings or failed to adequately explain how he reached the decisions he did).

evidence that osteoarthritis has compromised a nerve root. Ms. Erwin has not pointed to any medical evidence that her body exhibited the physical findings required under these listings, as shown by medical imaging or other objective measurement. Further, the administrative record reflects that agency physicians reviewed her medical records and concluded that Ms. Erwin's physical (and mental) impairments did not satisfy, or medically equal, any listings. (*See* R. 41-42). The record does not support Ms. Erwin's argument that her obesity was ignored at step three. Substantial evidence supports the ALJ's determination that the clinical record did not contain evidence necessary to meet or medically equal a listing.

## II. **The ALJ's analysis of Ms. Erwin's functional capacity also took her obesity into account.**

Dr. Fernando Montoya, a state agency physician, reviewed the medical evidence and completed a physical residual functional capacity assessment expressing his medical opinion regarding Ms. Erwin's exertional, postural, manipulative, visual, and communicative limitations. (R. 363). Dr. Montoya's report specifically notes that in reaching his conclusions he considered that Ms. Erwin has a body mass index of 39. (*Id.*) Ms. Erwin agrees that her height and weight result in a BMI of 39.1, classified as obese. The ALJ discussed Dr. Montoya's findings, including his acknowledgment of Ms. Erwin's high BMI. The RFC ultimately determined by the ALJ comports with—and in fact, is identical to—Dr. Montoya's assessment.

In *Prochaska v. Barnhart*, 454 F.3d 731 (7th Cir. 2006), the Seventh Circuit was faced with a complaint similar to that made by Ms. Erwin—that the ALJ did not explicitly discuss the effects of obesity in deciding functional limitations. The court found that when an ALJ adopts functional limitations suggested by reviewing physicians who were aware of the claimant's obesity, and the claimant fails to specify how her obesity impaired her ability to work beyond that suggested by the reviewing physicians, any error based on the ALJ not having specified the

effects of obesity is harmless. *Id.* at 737 (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) ("Because [the claimant] failed to 'specify how [her] obesity further impaired [her] ability to work,' and because the record relied upon by the ALJ sufficiently analyzes her obesity, any error on the ALJ's part was harmless".) *See also Kittelson v. Astrue,* 362 Fed. Appx. 553, 559 (7th Cir. 2010) ("Although it is troubling that the ALJ failed to discuss the impact of [the claimant's] obesity, the ALJ's failure to do so was harmless because he based his RFC on the limitations identified by doctors . . . who specifically noted [the claimant's] obesity, so it was 'factored indirectly' into his analysis.")

Ms. Erwin has not explained how her obesity should have been evaluated differently, but makes only generalized observations that "obesity can . . . cause limitation of function" and persons who are obese might be limited by their obesity in exertional and postural functions and in the ability to manipulate. (*See* Dkt. 17 at pp. 14, 15). Like the decisions reached in *Prochaska* and *Kittelson*—which Ms. Erwin did not address (and she did not file a reply brief), the court finds that any error based on the ALJ's failure specially to address the impact of Ms. Erwin's obesity on her functioning, while adopting an RFC consistent with the opinion of a physician who did, is harmless.

**III. <u>The ALJ addressed Ms. Erwin's headaches</u>.**

Ms. Erwin faults the ALJ's consideration of the evidence that she suffers from headaches. She acknowledges that the ALJ addressed her statements that she suffers from headaches two or three times per week and that her headaches become severe enough about once every two or three weeks that she must limit noise and light and go to bed. (*See* Dkt. 17 at p. 17). She contends, however, that the ALJ *merely* discussed her headaches but without any indication that he took them into account in deciding her RFC or whether they impacted jobs otherwise

available to her. The problem with Ms. Erwin's argument is, again, she makes only generalized observations about the effects headaches can have on a person's functioning and does not discuss how the ALJ should have altered his RFC to account for *her* headaches. The Commissioner points out that "no treating, consulting, or reviewing physician attributed any functional limitations" to Ms. Erwin's complaints about headaches, and cites two unpublished decisions of the Seventh Circuit affirming an ALJ's decision when a physician did not impose, or medical evidence did not support, limitations on a claimant's activities because of alleged debilitating headaches. *Million v. Astrue,* 260 Fed. Appx. 918, 922 (7th Cir. 2008); *Sienkiewicz v. Barnhart,* 119 Fed. Appx. 811, 817 (7th Cir. 2005). Ms. Erwin did not respond to this argument. Ms. Erwin simply has not shown that she suffers a loss of functioning because of headaches in some way incompatible with the ALJ's RFC.

## IV. The ALJ's RFC does not fail for lack of an explicit function-by-function discussion.

Ms. Erwin's last assertion of error also relates to the ALJ's RFC determination. She argues that instead of documenting his reasoning on a function-by-function basis, the ALJ "merely announce[d]" his decision that she has the capacity to perform the full range of light work involving lifting and carrying 20 pounds occasionally and 10 pounds frequently, sitting, standing, and walking six hours in an eight-hour work day, pushing and pulling on an unlimited basis, balancing and stooping frequently, occasionally climbing ramps and stairs, kneeling, crouching, and crawling, but never climbing ladders or scaffolds. (Dkt. 17 at p. 24). She contends that there's no indication where the limitations came from. Ms. Erwin relies on Social Security Ruling 96-8p which provides, in part:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b) [physical abilities], (c) [mental

> abilities], and (d) [other abilities] of 20 C.F.R. 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

*See* paragraph 4 of "purpose" section of SSR 96-8p. Ms. Erwin contends that SSR 96-8p requires the ALJ to have provided a more detailed function-by-function discussion than his decision contains. Particularly, she says that because "limitations on reaching, pushing, pulling, and handling" were not explicitly discussed, the ALJ's RFC lacks a substantial evidentiary basis and remand is necessary. (Dkt. 17 at pp. 20-21).

The record and case authority do not support Ms. Erwin's arguments. The ALJ stated in his discussion of the RFC that he was giving significant weight to the opinions of state agency physicians and cited to, among other opinions, Dr. Montoya's physical residual functional capacity assessment (*see* R. 356-63). The ALJ's RFC is identical to the assessment made by Dr. Montoya. The ALJ also addressed medical evidence relating to Ms. Erwin's abilities for reaching, pushing, pulling, and handling. He noted the results of the consultative physical examination, which included the findings that Ms. Erwin's muscle strength was 5/5 in her upper and lower extremities, that her grip strength was normal, and that her fine finger manipulation was normal. (R. 20). He addressed 2008 treatment records (which are later than Ms. Erwin's last insured status date) reflecting a partial rotator cuff tear, its surgical repair, and later findings that Ms. Erwin had "full active and passive range of motion" and "strength at 5/5 in all planes with no sub-acromial crepitus or catching." (R. 21).

So, the RFC was not a mere "announcement." The ALJ addressed the medical evidence and explained his reliance on Dr. Montoya's assessment, a medical opinion that addresses each of Ms. Erwin's physical abilities function-by-function. The RFC withstands judicial scrutiny under the substantial evidence standard. *See Knox v. Astrue*, 327 Fed. Appx. 652, 657 (7th Cir.

2009) ("Although the 'RFC assessment is a function-by-function assessment,' SSR 96-8p, the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient").

**Conclusion**

For the foregoing reasons, the Commissioner's decision that Ms. Erwin was not disabled as of her last insured status date is AFFIRMED.

So ORDERED.

Date: 03/15/2012

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov